IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Barbara A. Lincicome,              :
              Plaintiff       :    Civil Action 2:11-cv-678

      v.                  :    Judge Sargus

Michael J. Astrue,            :    Magistrate Judge Abel
Commissioner of Social Security,
            Defendant   :

## REPORT AND RECOMMENDATION

Plaintiff Barbara A. Lincicome brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her applications for Social Security Disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Lincicome maintains that she became disabled at age 39 by knee and back problems. (Page ID 298.) In August 2009, she underwent left knee replacement surgery. There are no documented severe impairments to her back or right knee. She does have a history of mental health treatment. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge's residual functional capacity finding is not supported by substantial evidence;
- The administrative law judge's findings regarding pain and symptoms understated the severity of plaintiff's symptoms thus leading to an overstated residual functional capacity.

**Procedural History.**  Plaintiff Lincicome filed her applications for disability in-

surance benefits and supplemental security income on April 26, 2007, alleging that she

became disabled on December 31, 2006, at age 39.  (Page ID 246-53, 254-56.)  The appli-

cations were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hear-

ing before an administrative law judge.  On October 16, 2009 and March 4, 2010, an

administrative law judge held two hearings at which plaintiff, represented by counsel,

appeared and testified.  (Page ID 72-118, 130-54.)  A vocational expert also testified.

(Page ID 118-22, 154-61.)  On June 7, 2010, the administrative law judge issued a decis-

ion finding that Lincicome was not disabled within the meaning of the Act.  (Page ID

45-62.)  On June 24, 2011, the Appeals Council denied plaintiff's request for review and

adopted the administrative law judge's decision as the final decision of the Commiss-

ioner of Social Security.  (Page ID 36-39.)

**Age, Education, and Work Experience.**  Lincicome was born in October 1967

(Page ID 246.)  She has a "limited" tenth grade education.  (Page ID 303.)  Lincicome

previously worked as a cashier, decorator, pizza deliverer, and a stock person in a retail

store.  (Page ID 299.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized

Lincicome's testimony as follows:

> The claimant reported on disability reports and questionnaires prior to
> requesting a hearing and testified at the hearing that she lives with a
> friend.  She does not drive.  She testified that her most severe problem is
> related to her left knee.  She had two arthroscopy procedures done and

eventually had total knee replacement surgery in October 2009. She has
been using a cane since 2007 to help her walk. She reports difficulty
climbing stairs. She also complains of low back pain. Non-insulin dia-
betes and some anxiety and depression. She had two suicide attempts by
overdosing on medications. She said that her pain was at a level "7-8/10"
the day of the hearing. Lying down makes the pain better and she report--
edly lies down 90 percent of the time by sitting in her recliner elevating
her left leg/knee daily. Her depression and anxiety have caused her to get
fired from work because she doesn't get along with people. Yet she
reported that she lost her cashiering job not from physical reasons but
because she was accused of theft. She avoids crowds. She reads for enjoy-
ment. Her mental impairments cause her to be "happy go lucky" one sec-
ond and then the complete opposite the next minute. It doesn't take much
to "tick her off." She sleeps 5-6 hours a night and frequently feels tired
and worn out. She talks to people on the phone.

When questioned about her physical abilities, the claimant testified that
she could walk less than a half block and on a good day could walk a little
bit farther. She would have to stop and take breaks. She could stand for
10-15 minutes and can sit for 20 minutes or up to four hours but would
then need to elevate her leg.

(Page ID 52.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets

out the relevant medical evidence of record. This Report and Recommendation will

only briefly summarize that evidence. Although Lincicome underwent psychological

treatment and examination, plaintiff's assignments of error relate entirely to her phys-

ical impairments. Accordingly, the Magistrate Judge will focus his review of the med-

ical evidence on Lincicome's alleged physical impairments.

In March 2006, Lincicome underwent a left knee arthroscopy with chondroplasty

and lateral release. (PageID 419.)

Genesis Healthcare/Good Samaritan Hospital.  Lincicome presented to the emergency room in April 2007 with numerous complaints, including lower back pain. (PageID 385-91.)  She rated her back pain at an 8 on an analog pain scale. (PageID 390.) Examination revealed paraspinal tenderness in the lower back and normal range of motion of the lower extremities.  (PageID 387.)  She was given medication and released.

Mark Holt, M.D. Lincicome began treating with orthopedic surgeon, Dr. Holt in April 2007.  Her prior history related to her March 2006 left knee arthroscopy was reviewed.  Lincicome complained of constant pain in her anterior knee area.  Her pain was worsened doing day-to-day activities, including going up and down steps, deep knee bends, squatting, and crawling.  She also reported swelling with increased activity. She has limp, catching, giving out, and night symptoms.  Lincicome denied numbness, tingling, signs or symptoms of infection.  Upon examination, Dr. Holt noted Lincicome did not have an ambulatory aid.  Dr. Holt found valgus alignment of her knee on stand-ing.  She's able to fully straighten out her knee on standing.  Dr. Holt found no dyses-thesias or paresthesias.  He also noted that Lincicome had "excellent" range of motion of her knee with some crepitus through motion.  Lincicome was tender to palpation along the lateral and medial para patellar tissue as well as medial tibial plateau.  Dr. Holt assessed left knee patella femoral stress syndrome and patella degenerative joint disease. He recommended Lincicome avoid aggravating activity, use an ambulatory aid, ice/heat and anti-inflammatory as needed.  Dr. Holt also prescribed physical therapy.  (PageID 419, 486.)

The record shows that Lincicome continued to see Dr. Holt through October 2007.  (PageID 476-85.)  Dr. Holt administered three Synvisc injections.  *Id.*  On June 29, 2007, an MRI of the left knee revealed mild bone bruising of the patella with no other significant derangement of the knee.  (PageID 474, 482, 488.)  Nerve conduction studies in August 2007 of Lincicome's lower extremities were within normal limits.  (PageID 487.)  Dr. Holt noted in July and August 2007 that Lincicome's symptoms were out of proportion to what he would expect for patellofemoral chondromalacia.  (PageID 482, 484.)  Dr. Holt reported in September and October  2007 that Lincicome exhibited full range of knee motion with no or very minimal crepitus.  (PageID 480-82.)

Genesis Rehabilitation. Dr. Holt prescribed physical therapy, which Lincicome attended in May 2007 for six sessions.  (PageID 407-14.)  Lincicome reported that her knee buckles, and it hurt to straighten out.  (PageID 411.)  The therapist reported on her last visit that Lincicome's non-verbal communication was inconsistent with her subjective reports of 8-9/10 pain.  (PageID 407.)

Mark E. Weaver, M.D.  Lincicome was examined by Dr. Weaver on behalf of the state agency in July 2007.  (PageID 430-38.)  An x-ray of Lincicome's lumbar spine showed mild degenerative changes.  (PageID 422.)  Upon examination, Dr. Weaver found that Lincicome walked with a stiff gait and left limp using a cane on her right side.  He found no swelling, discoloration or gross deformities in Lincicome's extremities.  Strength testing in manual muscles was ratchety and inconsistent with pain inhibition with giving way in the left thigh musculature with knee pain but normal in

all other muscle groups. Examination also revealed tenderness over the medial and lateral aspects of the left knee joint and bilateral crepitus in both knees on active motion. Dr. Weaver reported that Lincicome was able to perform 30% of a normal squat. She was able to get off the examination table with assistance complaining of left knee pain. Lincicome's neurological examination was normal. Dr. Weaver assessed Lincicome's ability to do physical activities as follows: "In view of her lower back and left knee problems all compounded by her problem of being overweight (BMI = 34.3), she would probably be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, squatting, stooping, crouching, kneeling, crawling and doing any lifting and carrying activities as she requires the use of a cane for ambulation constantly now. She would probably be capable of performing physical activities involving handling objects, hearing, speaking, following directions and travel in environments that would allow her the opportunity to change positions from sitting to standing and vice versa periodically as required. (PageID 434.)

Myung Cho, M.D. On August 22, 2007, Dr. Cho, a state agency physician, con-ducted a form physical residual functional capacity assessment based upon the record. (PageID 439-46.) Dr. Cho opined was capable of lifting and/or carrying 10 pounds frequently and 20 pounds occasionally, standing/walking for about six hours in an eight-hour work day and sitting for about six hours in an eight-hour work day. Dr. Cho also opined that Lincicome could occasionally engage in most postural activities, but she could never climb ladders, ropes, or scaffolds. (PageID 441.) He found no manip-

ulative, visual, communicative, or environmental limitations, and concluded that Lincicome's symptoms were attributable to a medically determinable impairment. (PageID 441-43.) Dr. Cho noted that Lincicome's statements "appear to be mostly credible as she reports knee and back pain. (PageID 440.)

Jerry McCloud, M.D. On November 22, 2007, Dr. McCloud, a state agency physician, conducted another physical residual functional capacity assessment based on plaintiff's record. (PageID 490-97.) Dr. McCloud found that Lincicome retained the ability to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was limited in the lower extremities. (PageID 491.) He found Lincicome would be limited to occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. (PageID 492.) Lincicome also could never kneel or crawl. Dr. McCloud further found that Lincicome would be limited to no extreme heat or fumes, odors, dust, etc. and concluded that Lincicome's symptoms were attributable to a medically determinable impairment. (PageID 494-95.) Dr. McCloud found Lincicome's statements fully credible. (PageID 495.)

Carl Schowengerdt, M.D. Dr. Schowengerdt is Lincicome's primary care physician, and he saw her from at least June 2007 onward. In November 2007, Dr. Schowengerdt noted she was being treated for back pain, left knee pain and diabetes. (PageID 463.) Examination in September 2008, revealed her spine was normal, and she had mild swelling in both knees, but she had a full range of motion with pain and no

crepitus. (PageID 537-39.) A CT scan of Lincicome's knees taken on September 23, 2008, showed mild lateral subluxation of the patella bilaterally, a tiny popliteal cyst on the right knee, but no evidence of acute fracture or joint effusion. (PageID 558-59.) In October 2008, Lincicome asked Dr. Schowengerdt for a prescription for a scooter, com-plaining that she could not walk more than a block without pain. Dr. Schowengerdt declined to provide a scooter prescription, instructing Lincicome instead to con-tinue ambulation as tolerated and use a brace for her left knee. (PageID 529-32.) In June 2009, Lincicome asked Dr. Schowengerdt for a scooter again. Examination revealed normal gait, strength, and range of motion in her extremities. Dr. Schowengerdt again advised Lincicome that she did not qualify for a scooter. (PageID 643-46.)

A July 2009 MRI of Lincicome's lumbar spine showed mild degenerative changes at L5-S1 without neural foraminal narrowing or central canal stenosis. (PageID 636.)

Mark D'Onofrio. M.D. Lincicome first saw Dr. D'Onofrio, an orthopedist, for evaluation of her bilateral knee pain on March 26, 2009. (PageID 564.) Examination revealed that Lincicome had a 1+ effusion, positive medial joint line tenderness, and positive McMurray's sign medially. Dr. D'Onofrio found Lincicome had a full range of motion of the left knee. Lincicome's knee was stable to varus, valgus, anterior and posterior stressing. Quadriceps extensor mechanism was intact. Dr. D'Onofrio diagnos-ed left knee pain, probable meniscal tear versus over arthritis flare. He ordered an MRI. *Id.*

An MRI of Lincicome's left knee taken in April 2009 revealed a small longitudinal tear of the medial meniscus, tricompartment chondromalacia, degenerative arthrosis, and small joint effusion. (PageID 571-72.)

On May 15, 2009, Dr. D'Onofrio performed a left knee arthroscopy with partial medial meniscectomy. (PageID 565-66.) On May 26, 2009, Dr. D'Onofrio noted that Lincicome's portals were well-healed, and she exhibited full range of motion in her knee. He released her to activities. (PageID 563.)

In July 2009, Lincicome was evaluated again for left knee pain. Lincicome reported that she had not gotten the relief that she was hopeful for with her scope. Dr. D'Onofrio noted that Lincicome was quite young and she has been through Synvisc and cortisone and was not interested in any further non operative interventions. Lincicome requested that Dr. D'Onofrio replace her knee. Dr. D'Onofrio indicated that Lincicome's imaging studies showed moderate degenerative changes in her left knee. (PageID 653.)

On July 29, 2009, Dr. D'Onofrio completed a physical capacity evaluation. (PageID 651-52.) According to Dr. D'Onofrio, Lincicome could stand for four hours total, for two minutes at a time; walk for four hours total, for two minutes at a time; and sit for eight hours during an eight-hour work day. He further opined that Lincicome could lift 21 to 50 pounds, but only rarely; could use her feet for repetitive movements as in operating foot controls; occasionally bend, squat, and climb steps; but should

never crawl or climb ladders. Dr. D'Onofrio concluded that a replaced knee limits standing/walking/lifting. (PageID 652.)

On August 10, 2009, Dr. D'Onofrio performed a left total knee replacement. (PageID 657-64.) On August 25, 2009, at her post operative appointment, Dr. D'Onofrio noted that Lincicome was "doing well" and struggling a little bit with extension, but her knee was stable during stress tests, and she was neurovascularly intact with no erythema or warmth. (PageID 630.)

David Klein, M.D. Lincicome began seeing Dr. Klein in September 2009 due to complaints of knee pain. (PageID 705-06.)

On February 9, 2010, Dr. Klein reported to Lincicome's counsel that he had seen Lincicome three times, and that none of her medications had resolved a "very antalgic gait." (PageID 712.) Dr. Klein noted that Lincicome suffered "great difficulty in ambulation" due to her left knee posterior effusion. *Id.* Dr. Klein further reported that, "because of the rheumatoid arthritis, it would be prudent for her to limit her ambulation to activities which are tolerated." He stated that he had not performed a functional capacity evaluation and did "not feel it [wa]s medically prudent to guess at the answers to the questionnaire which you have provided." *Id.*

On February 23, 2010, Dr. Klein reported that Lincicome had "a great deal of pain in her leg from her knee. It is quite reasonable that even though she were in a job which was sedentary that she would require elevation of her leg. It is very likely that her

10

condition would require missing two, three or more days per month because of her arthritis." (PageID 729.)

Stephanie J. Ott, M.D.  Lincicome was seen in consultation by rheumatologist, Dr. Ott on January 21, 2010.  (PageID 734-38.)  Lincicome complained of diffuse pain, all over, all of the time.  She rated her pain at a 6/10.  Lincicome also complained of hurting "everywhere most days, Any kind of movement makes her pain worse.  She does not sleep well secondary to pain."  (PageID 734.)  Examination revealed no clubbing, cyanosis or edema in the extremities, no CVA tenderness in her back and no spinal process tenderness.  Dr. Ott did find 18/18 tender points with hyperalgesia and allodynia.  Lincicome reported being diagnosed with rheumatoid arthritis three times, but had never actually seen a rheumatologist to be treated.  Dr. Ott indicated that Lincicome's positive rheumatoid factor had no clinical significance, and was doubtful that it had any clinical significance in the past, as Lincicome showed no signs of or evidence of any damage from rheumatoid arthritis.  (PageID 735.)  Dr. Ott's impressions were fibromyalgia, chronic fatigue, osteoarthritis, multiple sites and positive rheumatoid factor with no clinical significance.  Dr. Ott switched Lincicome's medications and recommended "a good exercise program."  *Id.*

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.     The claimant has not engaged in substantial gainful activity since December 31, 2006, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.     The claimant has the following severe impairments: degenerative disc disease of the lumbar spine at the LS-S1 levels; osteoarthritis of the left knee, status post two arthroscopy surgeries and left total knee replacement; obesity; non-insulin dependent diabetes mellitus; bipolar disorder and generalized anxiety disorder (20 CFR 404,1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the [administrative law judge] finds that the claimant has the residual functional capacity to perform the light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for two hours at a time for a total of eight-hours a day and stand and walk for two hours at a time for a total of four hours in an eight-hour workday. She can occasionally bend and squat but never climb ladders or crawl. Mentally, the claimant is limited to no production quotas; or high stress work but can deal with routine work stress such as getting to work on time and staying at simple tasks.

6.     The claimant is capable of performing her past relevant work as a pottery decorator/hand painter and fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Page ID 47-62.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind

12

might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is

"'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976). The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

    **Plaintiff's Arguments.** Lincicome argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge's residual functional capacity assessment is not
  supported by substantial evidence. (Doc. 12 at 7.) Plaintiff contends that the
  opinion attributed to Dr. D'Onofrio by the administrative law judge is wildly
  and vitally different from the opinion committed to writing by the doctor. (*Id.*
  at 8.) Here, the administrative decision failed utterly to evaluate Dr. D'Ono-
  frio's opinion as written. Instead, the administrative law judge misreported
  that opinion, altering it substantially to conform to his own notion of what was
  reasonable. (*Id.* at 10.) In addition, the formulation of hypotheticals which

eventually became the residual functional capacity was bound up inexorably with the confusion over Dr. D'Onofrio's residual functional capacity, a confusion compounded by the administrative law judge at both hearings. (*Id.* at 11.)

- The administrative law judge's findings regarding pain and symptoms understated the severity of plaintiff's symptoms thus leading to an overstated residual functional capacity. (*Id.* at 11.) Plaintiff argues that the administrative law judge overstated Lincicome's daily activities which resulted in an erroneous finding of non-disability under the second *Duncan* prong. (*Id.* at 12-13.) Plaintiff further argues that the administrative law judge failed to evaluate Dr. Klein's opinion under all of the factors, including those particular to a treating source opinion, required by 20 C.F.R. § 404.1527(d). (*Id.* at 14.)

**Analysis.** First, plaintiff maintains that the administrative law judge erred in rejecting the opinions of Dr. D'Onofrio, her treating physician, who had assessed Lincicome's residual functional capacity. Within this first contention of error, plaintiff also indicates that in reaching his decision, the administrative law judge substituted his own medical judgment in place of Dr. D'Onofrio's opinion.

The treating physician rule, when applicable, requires the administrative law judge to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the

14

administrative law judge. *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); see *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Id.*

Furthermore, the Commissioner's regulations provide that he will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.*

There is a rebuttable presumption that a treating physician's opinion is entitled to great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, for the treating physician's opinion to have controlling weight it must have

"sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson*, 378 F.3d at 544 (6th Cir. 2004).

In formulating Lincicome's residual functional capacity, the administrative law judge considered but did not accept the less restrictive assessments of the state agency physicians, Drs. Cho and McCloud. (PageID 59.) He found that their opinions are not consistent with the other medical evidence. *Id.* The administrative law judge gave "great weight" to the opinion of Dr. D'Onofrio. (PageID 60.) However, the administrative law judge failed to adopt the limitations described by Dr. D'Onofrio. (PageID 651-52.) In fact, his decision affirmatively mistates Dr. D'Onforio's opinions regarding Lincicome's ability to stand and walk:

> Dr. D'Onofrio noted in July 2009 that she could stand two hours at a time and walk up to two hours at a time and for four hours total in eight hours with occasional bending (Exhibit 25F). This seems consistent with her level of activity and the balance of the record and does not suggest a disabling impairment.

(PageID 58.) In fact, Dr. D'Onofrio said that Lincicome could stand for four hours total, but only for two minutes at a time; and she could walk for four hours total, but only for two minutes at a time. The administrative law judge provided no explanation for his

16

decision to exclude these limitations found by Dr. D'Onofrio. Plaintiff asserts that such omission constitutes reversible error. The Magistrate Judge agrees.

The Sixth Circuit has found that to be entitled to substantial deference...[an administrative law judge's non-disability finding] must clearly articulate the rationale underlying the decision. *See Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985). In *Hurst*, the court discussed the articulation necessary to support an administrative law judge's decision regarding disability benefits. The Court stated: "[i]t is more than merely 'helpful' for the administrative law judge to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst*, 753 F.2d at 519 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)).

Thus, an administrative law judge's decision must articulate with specificity reasons for the findings and conclusions that he or she makes. Similarly, Social Security Ruling ("SSR") 82-62, provides that the "rationale for a disability decision must be written so that a clear picture of the case can be obtained." SSR 82-62 at *4. The administrative law judge's decision must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion." *Id.; See also Morris v. Secretary of Health & Human Servs.*, No. 86-5875, 1988 WL 34109, at * (6th Cir. Apr. 18, 1988) (*per curiam*) (noting, in reliance upon *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981), that, when an administrative law judge fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply

ignored").  An administrative law judge may not ignore evidence favorable to plaintiff.

Rather, he must articulate the evidence accepted or rejected when making a disability

finding to enable the reviewing court to engage in meaningful judicial review.  *See Hurst*

*v. Secretary of H.H.S.*, 753 F.2d 517, 519 (1985).  *See also Bailey v. Commissioner of Social*

*Sec.*, 173 F.3d 428 (6th Cir. 1999)(unpublished), 1999 W.L. 96920.

During the administrative hearing, the administrative law judge stated that Dr.

D'Onofrio's residual functional capacity included Lincicome "staying two hours of

standing and two hours of walking and four hours of being on her feet." (PageID 123.)

When plaintiff's counsel pointed out that Dr. D'Onofrio opined two minutes at a time,

the administrative law judge stated, "I thought that was two hours?" (PageID 123-24.)

Plaintiff's counsel again clarified: "Four hours total of the day, two minutes at one

time," and the administrative law judge remarked, "I need to take a closer look at that. .

. . That's crazy." (PageID 124.)  The vocational expert inquired during the second

administrative hearing, "I'm not clear whether [Dr. D'Onofrio is] saying she could stand

and walk—two minutes at a time.  I think it said two hours at a time." (PageID 156.)  It

was clarified that Dr. D'Onofrio opined "minutes."  *Id.*  The administrative law judge

interjected, "Looks like two hours and four hours during an eight-hour period." *Id.*

After reviewing Dr. D'Onofrio's assessment, the administrative law judge said, "Well,

I'm sorry, that two minutes is crazy." (PageID 157.)

The administrative law judge's decision also asserted that Lincicome's

descriptions of her symptoms and limitations were not always credible:

In addition to a lack of objective medical evidence to support the claimant's allegations of severe disability, there are also several inconsistencies in the record that compromise the claimant's credibility. Although these inconsistencies/exaggerations may not be the result of a conscious intention by the claimant to mislead, nevertheless such statements suggest that the information provided by the claimant generally may not be entirely reliable.

(PageID 59.)

The administrative law judge may reasonably have had doubts about Dr. D'Onofrio's residual functional capacity opinions and Lincicome's credibility. For example, those findings were made one month before the August 2009 left knee replacement surgery. There is no medical residual functional capacity opinion following the surgery. Further, the residual functional capacity permitted Lincicome to use her her feet for repetitive motion to operate foot controls, yet permitted her to be on her feet for only two minutes at a time. Nonetheless, the proper procedure for an administrative law judge to follow to resolve those doubts is not to make his own medical assessment. He should have gone back to Dr. D'Onofrio and asked for clarification of his opinion and/or for an assessment of Lincicome's residual functional capacity post-surgery. See 20 C.F.R. §404.1512(e)(1). *See, O'Donnell v. Barnhart,* 318 F.3d 811, 818 (8th Cir. 2003). Of course, he might also refer her for an orthopedic evaluation or send the medical record to an orthopedist for an residual functional capacity evaluation.

Relatedly, substantial evidence does not support the physical residual functional capacity limitations the administrative law judge assigned to plaintiff. The administrative law judge appears to base his residual functional capacity findings, and most

19

importantly his determination that plaintiff could stand and walk for two hours at a time for a total of four hours in an eight hour workday, on his own interpretation of the raw medical data.

Thus, remand is required in this case because otherwise, this court is left wholly to speculate on the reasons for the administrative law judge's omission of the limitations outlined by Dr. D'Onofrio.

Plaintiff next argues that the administrative law judge erred by rejecting her allegations of disabling pain. This Magistrate Judge agrees.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the administrative law judge will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the administrative law judge finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of*

*Health and Human Services*, 945 F.2d 1365 (6th Cir. 1991), citing, *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986).  Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones*, 945 F.2d at 1366-70.

The measure of an individual's pain cannot be easily reduced to a matter of neat calculations.  *Jones, supra*.  There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing.  *Id.*  Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.  *Id.*  The Commissioner's own guidelines acknowledge the most inexact nature of this evaluation:

> Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity.  Whenever available this type of objective medical evidence must be obtained and must be considered in reaching a conclusion as to whether the individual is under a disability.

*Jones*, 945 F.2d at 1369-70, quoting SSR 88-13.

For the same reasons that the administrative law judge erred by rejecting Dr. D'Onofrio's opinion, he erred by rejecting plaintiff's allegations of disabling pain. Specifically, the administrative law judge first determined that plaintiff has severe impairments that could reasonably be expected to produce plaintiff's pain, to wit: degenerative disc disease of the lumbar spine at the LS-S1 levels; osteoarthritis of the

left knee, status post two arthroscopy surgeries and left total knee replacement; obesity; and non-insulin dependent diabetes mellitus.  In addition, as noted above, the record reveals that plaintiff has exhibited several of the *Jones* reliable indicators from which one can draw a reasonable conclusion of the intensity of plaintiff's pain. For example, plaintiff has exhibited paraspinal tenderness in the lower back (PageID 387),  some crepitus through motion, tenderness to palpation along the lateral and medial para patellar tissue as well as medial tibial plateau (PageID 419, 486), tenderness over the medial and lateral aspects of the left knee joint and bilateral crepitus in both knees on active motion (PageID 432-33), and "very antalgic gait." (PageID 712.)

Consequently, the undersigned recommends that this case be remanded to permit the administrative law judge to properly assess plaintiff's credibility.

**Conclusions.** For the reasons set forth above, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **REMANDED** to properly evaluate Dr. D'Onofrio's residual functional capacity assessment and Lincicome's pain and credibility.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See*

*also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel               <br>
United States Magistrate Judge